NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0410n.06

No. 20-3902

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MADINA TAIROVNA RAHMATOVA,   )
                             )
        Petitioner,          )
                             )
v.                           )
                             )
MERRICK B. GARLAND, Attorney General,   )
                             )
        Respondent.          )
                             )

**FILED**
Aug 31, 2021
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

**BEFORE: BOGGS, CLAY, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge**. Petitioner Madina Tairovna Rahmatova, a native and citizen of Uzbekistan, seeks review of the Board of Immigration Appeals' (BIA) decision denying her motion to reopen her removal proceedings. Because the BIA rationally denied Rahmatova's motion to reopen based on changed country conditions, we DENY the petition for review.

**I.**

Rahmatova was admitted to the United States as a nonimmigrant visitor on or about September 26, 2004. Rahmatova entered with her then-husband Shehroz Tokhirov, who filed applications for asylum, withholding of removal, and protection under the Convention Against Torture with the Department of Homeland Security (DHS) in May 2006, listing Rahmatova as a derivative beneficiary. DHS referred the applications to an immigration judge (IJ) in November 2008, and initiated removal proceedings against Tokhirov and Rahmatova, charging them with

removability for overstaying their visitor visas. On October 22, 2010, the IJ denied the applications for relief, and the BIA dismissed Tokhirov's appeal on October 11, 2012.

On April 6, 2020—over seven years after the BIA dismissed the appeal of the IJ's decision on the couple's initial applications—Rahmatova filed a motion to sever and reopen her proceedings, alleging changed country conditions in Uzbekistan and seeking an opportunity to apply for asylum, withholding of removal, and protection under the Convention Against Torture based on her conversion from Islam to Christianity and her 2016 divorce. In support of her argument that conditions in Uzbekistan had materially changed since her prior hearing, Rahmatova stated:

> Uzbekistan has been changing into a Muslim country of a lot of individuals with extremist views. Attached hereto and in support hereof is a U.S. Department of State 2017 Report on International Religious Freedom and Amnesty International Report for Uzbekistan for 2017/2018, a Time Magazine article regarding Extremist Islam in Uzbekistan . . . , and a paper of Minnesota Advocates for Human Rights on Domestic Violence in Uzbekistan stating that the society condemns divorced women and they still suffer after their divorce.

AR 45. Rahmatova also attached several other documents to her motion to support her assertions that she would be persecuted in Uzbekistan as a divorced Christian woman, including evidence that she had been threatened and harassed due to her religion.

DHS opposed Rahmatova's motion, arguing that she asserted a change in personal circumstances rather than a material change in country conditions. DHS further argued that the evidence Rahmatova submitted failed to establish that there has been any change in country conditions relating to the new personal circumstances. In support, DHS appended the 2012 Department of State Religious Freedom report for Uzbekistan, arguing that the 2012 report "reveal[ed] identical concerns regarding the treatment of Christians," and, "[l]ike the 2017 report, the 2012 report notes raids on Christian services, confiscation of Christian books, blocked access to Christian websites, general discrimination of Christians, and mistreatment of converts." AR 8.

The BIA denied Rahmatova's motion to reopen in a three-page decision, stating in relevant part:

> The respondent's motion to reopen is untimely. The respondent contends that an exception to the time limitation applies based on changed country conditions and personal circumstances. She alleges that she has become the target of insults, harassment, and humiliation because of her recent divorce by the people in Uzbekistan because it is a Muslim country and she comes from a strictly conservative family. She also fears persecution due to her conversion from Islam to Christianity.
>
> In support of these claims, the respondent has submitted her declaration, her new asylum application, copies of a psychological evaluation, letters from the pastor and fellow church member of the All Nations Church in Brooklyn, NY, copies of two summons dated November 28, 2005, and November 15, 2018, a letter from the respondent's mother, copies of purported threatening screen shots from the respondent's phone, photos of the respondent at church in the United States, the 2017 Department of State Human Rights report for Uzbekistan, the 2017/18 Amnesty International report for Uzbekistan, and a Time Magazine article dated November 1, 2017, entitled "Uzbekistan's History with Islam Might Explain a Lot About the New York Attack Suspect," and a December 2000 report by the Minnesota Advocates for Human Rights on domestic violence in Uzbekistan.
>
> The evidence submitted by the respondent is insufficient to show changes in conditions or circumstances in Uzbekistan material to the respondent's asylum claims. While the respondent alleges that since her final hearing she has divorced her husband and converted to Christianity, we agree with the DHS that these are changes in personal circumstances that do not constitute a change "arising in" Uzbekistan such that her motion may be found to fall within this exception to the motion time limits. *See Haddad v. Gonzales,* 437 F.3d 515, 517 (6th Cir. 2006). Moreover, the respondent has not shown that conditions for divorcees or Muslim converts to Christianity have changed since her 2010 hearing below.
>
> Additionally, the respondent has not established the Uzbek government is unable or unwilling to protect her from her family, or other private actors. *See Matter of A-B-,* 27 I&N Dec. at 33 (A.G. 2018) (holding that "[N]o country provides its citizens with complete security from private criminal activity, and perfect protection is not required"). Consequently, the respondent has not demonstrated a material change in circumstances or conditions in Uzbekistan.
>
> Based on the above, we conclude that the respondent did not show that country conditions or circumstances in Uzbekistan changed materially, such that her motion falls within an exception to the motion to reopen time limitations.

AR 4-5 (some citations omitted).

This timely petition for review followed.

**II.**

"We review the BIA's denial of a motion to reopen immigration proceedings for abuse of discretion." *Trujillo Diaz v. Sessions*, 880 F.3d 244, 248 (6th Cir. 2018) (citing *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007)). "Because the BIA has such broad discretion, a party seeking reopening or reconsideration bears a heavy burden." *Preçetaj v. Sessions*, 907 F.3d 453, 457 (6th Cir. 2018) (internal quotation marks omitted) (quoting *Alizoti*, 477 F.3d at 451). An abuse of discretion occurs where "the BIA's denial 'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Trujillo Diaz*, 880 F.3d at 248 (quoting *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)).

Motions to reopen are subject to temporal and numerical limitations and generally must be filed within ninety days of the final administrative order of removal. *See* 8 U.S.C. § 1229a(c)(7)(C)(i). There is an exception to the ninety-day filing deadline for reopening if the motion is for the purpose of applying for asylum "and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." *Id.* § 1229a(c)(7)(C)(ii). Rahmatova's motion to reopen, filed more than seven years after the date of entry of the BIA's final order of removal, is therefore untimely unless it meets the "changed country conditions" exception.

Rahmatova argues that the BIA misconstrued her motion as relying solely on changes in her personal circumstances (her divorce and conversion to Christianity) rather than changes in circumstances arising in Uzbekistan that would provide an exception to the time limit for filing a motion to reopen. Although Rahmatova "agrees and readily acknowledges that her divorce and

conversion were changes in personal circumstances," Pet'r Br. at 11, and does not dispute that these changes in personal circumstances are insufficient to qualify for an exception to the ninety-day time limitation, *see Haddad*, 437 F.3d at 517, she argues that the BIA abused its discretion because it failed to sufficiently address her contention that there had been a material increase in religious extremism in Uzbekistan.

We disagree. Although the BIA found that Rahmatova alleged changes in personal circumstance that do not constitute changes "arising in" Uzbekistan, the BIA also concluded that Rahmatova "has not shown that conditions for divorcees or Muslim converts to Christianity have changed since her 2010 hearing below." AR 4. The BIA therefore recognized Rahmatova's argument but rejected it based on inadequate support. As the government points out, Rahmatova's argument about changed country conditions was limited to two conclusory sentences, and she never explained how the evidence she attached establishes the requisite changed country conditions. Further, the government persuasively explained why Rahmatova's evidence was either irrelevant to the analysis or did not support her argument, and Rahmatova has never attempted to rebut the government's showing.

Although we have previously vacated BIA decisions where it failed to adequately explain its rationale, those cases involved more detailed presentations by the petitioner and were limited to circumstances in which the BIA failed to address evidence and arguments presented by the petitioner. *See, e.g.*, *Preçetaj*, 907 F.3d at 457 (remanding where the BIA did not address the "evidence and arguments" regarding changed country conditions); *Lindor v. Holder*, 317 F. App'x 492, 497-99 (6th Cir. 2009) (same). Although it is not within our purview to make findings of fact or reweigh the evidence submitted by both parties, the burden to establish a material change in country conditions rests with the party seeking reopening or reconsideration. *Preçetaj*, 907 F.3d

at 457. Given the conclusory nature of Rahmatova's argument and the government's persuasive response that Rahmatova did not establish a material change in country conditions, the BIA's explanation, although disappointingly brief, adequately addressed her evidence and arguments.

Next, Rahmatova argues that the BIA erred in finding that she did not establish that the Uzbek government is unable or unwilling to protect her. The paragraph at issue states:

> Additionally, the respondent has not established the Uzbek government is unable or unwilling to protect her from her family, or other private actors. *See Matter of A-B-*, 27 I&N Dec. at 343 (A.G. 2018) (holding that "[N]o country provided its citizens with complete security from private criminal activity, and perfect protection is not required"). Consequently, the respondent has not demonstrated a material change in circumstances or conditions in Uzbekistan.

AR 4.

Rahmatova reads this paragraph as erroneously requiring her to establish her eligibility for asylum rather than requiring her to show mere prima facie eligibility. *See Alizoti*, 477 F.3d at 451-52 (explaining that to reopen proceedings the petitioner must establish prima facie statutory eligibility, i.e., "a reasonable likelihood that the statutory requirements for relief have been satisfied" (internal quotation marks and citations omitted)). The government responds that Rahmatova misunderstands the BIA's decision:

> [T]he Board did not state that it was denying reopening because [Rahmatova] failed to establish her prima facie eligibility for the underlying relief she would seek in the reopened proceeding. Rather, the Board indicated that its unable-or-unwilling determination was an "additional[]" reason it included in its analysis of whether Ms. Rahmatova's late-filed motion was excepted from the ninety-day filing deadline, and that in view of all of those reasons, she "consequently" "ha[d] not demonstrated a material change in circumstances or conditions in Uzbekistan."

Resp't Br. at 19-20 (third and fourth alterations in original) (quoting AR 4).

Admittedly, the BIA's reasoning is unclear. The first sentence appears to find, as Rahmatova argues, that she did not establish one of the requirements for asylum. This interpretation is bolstered by the citation to the now-vacated *Matter of A-B-*, 27 I & N Dec. 316

(A.G. 2018), *vacated by Matter of A-B-*, 28 I & N 307 (A.G. 2021), which interpreted the substantive requirements for asylum and did not opine on the standard for a motion to reopen. On the other hand, as the government argues, the next sentence appears to use this failure by Rahmatova to support the BIA's conclusion that Rahmatova had not established changed country conditions, and does not suggest that the BIA was denying the motion on grounds other than untimeliness. Indeed, the BIA begins and ends its analysis by stating that Rahmatova's motion is being denied as untimely. Although the BIA's decision was not a model of clarity, it does not appear to have applied an incorrect standard to Rahmatova's motion.

We DENY the petition for review.